1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PROTECT THE PENINSULA'S
FUTURE; COALITION TO PROTECT
PUGET SOUND HABITAT; and
BEYOND PESTICIDES,

                    Plaintiff,

        v.

DEB HAALAND, SECRETARY OF
THE INTERIOR; UNITED STATES
FISH AND WILDLIFE SERVICE;
MARTHA WILLIAMS, DIRECTOR OF
UNITED STATES FISH AND
WILDLIFE SERVICE; HUGH
MORRISON, REGIONAL DIRECTOR
OF THE PACIFIC REGION; and
JENNIFER BROWN SCOTT,
PROJECT LEADER, WASHIN,

                    Defendant.

CASE NO. CV23-5737-BHS

ORDER

This matter is before the Court on limited intervenor Jamestown's motion for

reconsideration, Dkt. 71, of this Court's Order, Dkt. 65, denying Jamestown's motion to

dismiss.

1    The Court concluded that because the claims here seek only prospective,

2    injunctive relief requiring the Service to comply with Refuge Act procedures, and

3    because Jamestown failed in its burden to show compliance would impede any legally

4    protected interest, Jamestown is not a required party. Dkt. 65. Even if it were, the Court

5    concluded the public interest exception to traditional joinder rules would allow the case

6    to go forward because the claims seek to vindicate a public right to administrative

7    mandates to protect the Refuge. *Id*. at 2.

8    Jamestown argues that the Court made three "key errors" in its order: (1) it

9    questioned whether Jamestown a necessary party; (2) it misapplied Fed. R. Civ. P. 19 by

10   "ignoring evidence of impact and risk of inconsistent obligations;" and (3) it ignored a

11   "threshold question" of whether the Refuge Act applies to Jamestown's aquatic

12   leasehold. Dkt. 71 at 2.

13   Plaintiffs respond that Jamestown fails to raise any new arguments or arguments

14   which could not have been raised before with due diligence. Dkt. 75. They argue further

15   that the declaration of Hansi Hals, Dkt. 72, contains numerous improper legal

16   conclusions. The Service responds for the limited purpose of re-iterating that it enjoys

17   dominant property rights over the disputed tidelands due to its public purpose easement

18   from the State. Dkt. 76.

19   Motions for reconsideration are disfavored and will ordinarily be denied unless

20   there is a showing of (a) manifest error in the ruling or (b) facts or legal authority that

21   could not have been brought to the court's attention earlier with reasonable diligence. *See*

22   Local Rule 7(h)(1); *see also Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,

571 F.3d 873, 880 (9th Cir. 2009) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). The term "manifest error" is "an error that is plain and indisputable and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed. 2009).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A motion for reconsideration should not be used to ask a court to rethink what the court has already thought through, whether rightly or wrongly. *See Defenders of Wildlife v. Browner*, 909 F.Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *See Haw. Stevedores, Inc. v. HT & T Co.*, 363 F.Supp.2d 1253, 1269 (D. Haw. 2005). Whether or not to grant reconsideration is committed to the sound discretion of the Court. *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Jamestown's arguments are not new and they do not raise any factual or legal errors that that warrant reconsideration. Contrary to its assertion, the Court's Order did not merely "question" whether Jamestown was a necessary party under Rule 19. It decided definitively that "Jamestown is not a necessary party under Rule 19 because it

1    lacks a protected interest for purely procedural and prospective claims." Dkt. 65 at 15. No

2    further clarification is needed on this point.

3        Jamestown argues that the Court's conclusion that the requested relief is purely

4    procedural "ignores" evidence that ordering a compatibility determination (CD) would

5    "prohibit Jamestown from harvesting planted seeds or conducting essential monitoring,

6    interfering with its lease rights." Dkt. 71 at 3. These are points that Jamestown already

7    thoroughly briefed and that the Court considered, but rejected. *See, e.g*., Dkt. 60

8    (Jamestown Reply to Plaintiffs' response in support of its motion to dismiss) at 15

9    ("Performing a compatibility study alone will immediately halt existing operations and

10   harm years of investment and production potential."); see also Dkt. 63, Reply to Service

11   Resp. at 7 (same).

12        Jamestown argues that the Court applied a flawed standard by assessing whether

13   the CD "destroys" Jamestown's property rights and "improperly applied *Makah Indian*

14   *Tribe v. Verity,* despite evidence of impairment to Jamestown's legal entitlements. 910

15   F.2d 555, 558 (9th Cir. 1990)." Dkt. 71 at 4. Although Jamestown disagrees with the

16   Court's assessment of the applicability of *Makah* to the evidence Jamestown presented of

17   alleged impairment to its legal rights, it fails to identify any manifest legal error.

18   Jamestown's argument regarding the Court's use of the word "destroy" conflates the

19   necessary party analysis in *Makah* with caselaw discussing the public rights exception.

20   Caselaw discussing the public rights exception at times uses the term "destroy" to

21   describe the acceptable burden on non-parties once a court determines a public right is

22   vindicated. *See, e.g*., *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988) ("The

[Supreme] Court felt that this burden on the contractual rights of nonparties was acceptable, however, because such adjudications do not destroy the legal entitlements of the absent parties"). When assessing whether Jamestown is a necessary party however, the Court did not apply the "destroy" standard for the public interest exception but rather applied *Makah* and *Dine*[1] to determine that the purely administrative relief would not impede any of Jamestown's existing legal rights. Dkt. 65, Order, at 12 ("Jamestown has not shown that merely completing a compatibility determination or requiring a special use permit would impede its lease or treaty rights."). Jamestown fails to establish manifest legal error and its disagreement with how the Court applied caselaw to the facts it already presented is an insufficient basis for reconsideration. *Haw. Stevedores, Inc.*, 363 F.Supp.2d at 1269.

Jamestown asserts that the Court was incorrect in its assessment that Jamestown "appears to have planted seeds after it was aware that it was probable the Service would conduct a compatibility determination." Dkt. 71 at 5 (quoting Dkt. 65 at 15). It argues that this "flawed interpretation forms the basis of the Court's conclusion that it was the Tribe's own fault that it is harmed." *Id*. Even crediting that Jamestown was not aware of the probability of a compatibility requirement before it planted the seeds, it does not change the Court's analysis on the procedural nature of the relief or applicability of the public rights exception. Jamestown's request to modify the Court's ruling to reflect that it was not aware that a CD for its proposed oyster farm was probable when it planted seeds

---

[1] *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 847 (9th Cir. 2019)

1   is denied. The Order accepted as true the allegations in plaintiffs' complaint and drew all

2   reasonable inferences in the record in plaintiffs' favor for the limited purpose of ruling on

3   Jamestown's motion to dismiss. *Diné*, 932 F.3d at 851. It did not decide as a matter of

4   law Jamestown's awareness or lack thereof of the compatibility determination

5   requirements.

6          Jamestown's assertion that the Court misapplied Fed. R. Civ. P. 19 by failing to

7   evaluate the required second prong of Rule 19(a)(1)(B)(ii) regarding the substantial risk

8   of inconsistent obligations is similarly unavailing. Rule 19 addresses subjecting an

9   "existing party," meaning the parties prior to any decision on joiner, to inconsistent

10  obligations. Jamestown argues that the Service would be subject to inconsistent

11  obligations because it purportedly lacks jurisdiction over "State-owned tidelands."

12  Jamestown already raised this point in its initial motion to dismiss. *See, e.g.,* Dkt. 60,

13  Reply at 12 ("There is no public purpose vindicated when a threshold issue is whether the

14  Refuge Act even applies to the Tribe's lease and operations on the State-owned

15  tidelands"). The Court carefully considered but rejected its arguments, and Jamestown

16  fails to show any manifest legal error in its analysis.

17         Jamestown's argument that the Court ignored a "threshold question" of whether

18  the Refuge Act applies to Jamestown's aquatic leasehold also fails. It relied on its earlier

19  argument that the Service lacks authority to issue a CD because "evidence indicates the

20  Refuge-area jurisdiction does not extend to the tidelands." Dkt. 71 at 6; *see* Dkt. 61 at 16,

21  Ex. A (Map of NWR boundary attached to Hals Decl. submitted in support of motion to

22  dismiss). It argues that there "is no evidence that the State relinquished its fee simple

ORDER - 6

rights to these tidelands" and that "the earlier Executive Order [EO] creating the Refuge could not have included the tidelands and the lands were continuously leased for aquaculture." Dkt. 71 at 7. Jamestown previously raised and the Court already considered that the State enjoys fee simple property rights over the tidelands and that the lands were continuously leased for aquaculture. *See* Dkt. 63, Reply to Service, at 1 (fee simple ownership) and 4 (continuous aquaculture leases). Jamestown fails to establish that it could not with due diligence have earlier raised its argument that the EO creating the refuge could not have included the tidelands. In any event, Jamestown fails to acknowledge Washington property law which supports that uses by the fee simple owner of the tidelands, such as leasing it to others for aquaculture, may occur concurrently with the Service's use under its easement as long as those uses do not "unreasonably interfere with the easement holder's use." *Zonnebloem, LLC v. Blue Bay Holdings*, 401 P.3d 468, 471–72 (Wash. Ct. App. 2017); *Littlefair v. Schulze*, 278 P.3d 218, 221–22 (Wash. Ct. App. 2012). The Service argues persuasively that it has administered the tidelands as part of the Dungeness National Wildlife Refuge since 1943. Dkt. 76 at 2.

Jamestown fails to raise any arguments that warrant reconsideration of the Court's conclusion that the issue of whether the Service has authority to control Jamestown's activity in the Refuge is not ripe for review. Nothing in plaintiffs' claims seek a predetermination of the outcome of a CD or special use permit decision.

Jamestown has not raised any new facts or uncovered any manifest legal error that triggers reconsideration of the Court's conclusion that the claims here do not implicate its treaty rights. The claims ask the Court to interpret the Service's prospective

1  administrative duties under the Refuge Act. Such relief does not necessitate interpretation

2  of the scope of Jamestown's treaty rights and settlements. Even if the Court requires a

3  CD or special use permit determination, any treaty rights Jamestown has will remain fully

4  intact. As Jamestown recognized in its motion to dismiss, "Treaty rights and their scope

5  must be adjudicated in *U.S. v. Washington*." Dkt. 44 at 15 n.14. The Court here cannot

6  and will not determine any treaty rights in Jamestown's absence.

7        For the reasons articulated in this Order, the remainder of Jamestown's line-

8  specific requests for modification are denied.

## I.    ORDER

10        Therefore, it is hereby **ORDERED** that Jamestown's motion for reconsideration,

11  Dkt.71, is **DENIED**.

12        Dated this 14th day of July, 2025.

BENJAMIN H. SETTLE
United States District Judge